It's not obvious. Singh v. Sessions. Good morning, honors. Just one minute. Mr. Ahmed. We'll let folks clear out of the room. That way we won't be distracted and we'll give you our full attention. That's fine. Ready to go. Thank you. Here you go. Good morning, honors. May it please the court. Anas J. Ahmed for Petitioner Jagjit Singh. Petitioner Jagjit Singh escaped India in August 2011, entered the USA crossing the U.S.-Mexican border in Texas on September 16, 2011, and filed his I-589 asylum application on April 30, 2012. I'm just going to ask you. Yes. You're not alone in doing this, but you're tapping the podium. Sorry. No, that's all right. It's just a little distracting with a little clicking there, so carry on. The issue presented to court is a question of law, whether the Board of Immigration and the immigration judge misapplied the law, requiring the petitioner to prove an exact date of entry. Wasn't the determination made based on issues of fact? And if that's the case, do we have jurisdiction to be able to review the issue? It's not an issue of fact. It's actually an issue of law because they're misapplying the law, which does not require a petitioner to prove an exact date of entry. All it requires is the petitioner to prove that his I-589 asylum application was filed within one year of entry, as opposed to what the immigration judge and the Board of Immigration judges requiring an exact date of entry, which is a misapplication of law and precedent set by this court. So if we were to accept your view of the law and take your argument, what facts are there that essentially were ignored, I believe your position is? Well, the facts ignored by the agency were the fact that the petition was absent from the U.S., and this was corroborated by four pieces of evidence, two of which was by disinterested parties, which the agency did not even give any consideration to and was silent upon. He provided evidence from his previous employer stating that he was working up until May 2011, a letter by the village headman stating that he was persecuted on and beat in May 3, 2011, and this was disregarded by the agency in total, and they did not even speak on it. He provided affidavits placing him in India? Yes, we did, Your Honor. In May of 2011? Yes, we did. We provided two. One from his employer stating that he was working up until May 2011, and another by the village headman stating that he was reiterating his persecution, him being beat by the Indian police on May 3, 2011. And then we also have letters by his cousin, a U.S. citizen, that state that when he arrived in September 16, 2011, that she met up with him and then she gave him housing, and also a letter by his father. She didn't appear, or she wasn't available to be examined? Yes, she was unavailable, Your Honor. She was unavailable. And also a letter from his father stating his dates of persecution, which the latter one was May 2011, and with him filing his April 30, 2012 I-589 application entering September 16, 2011, would make it timely if they accepted and looked at his absence from the country. I'm sorry, could you restate that? By petitioner proving his absence from the United States, it allows him to file his I-589 to be timely. He was not within the country, and he's proven that, but the BIA ignored, the Board of Immigration and the immigration judge both ignored his absence. That is, he was not in the country 11 months earlier. Hence, he's within the U.S. When he files his application 11 months after he can show he is out of the country, that has to be timely. Exactly, yes. As a matter of law. As a matter of law, yes, Your Honor. They did not even broach this subject. The IJ had alternative grounds for denying. Perhaps you can address that. Well, the IJ found the petitioner partly incredible just to his part of his mistreatment, but he found him credible to the modes of his journey when he took his journey, his employment status, and the manner in which he came into the country as well. And he did not explicitly find him incredible, so he's assumed to be credible at that part, in terms of his modes of his journey, the way he came into the country. So even with that, taking that into consideration. The IJ found that Mr. Singh was not credible because of apparent inconsistencies in the details about being detained and beaten? Yes, Your Honor. And in both cases cited by both parties in the opposing counsel's brief and our brief, under Majidi, the discrepancies, the inconsistencies, the alleged inconsistencies must be dramatic. Just a mere omission from his I-589 statement stating that he was kicked in the back, does that amount to being dramatic, or is that just a mere omission? If we follow Majidi, that would not be a dramatic inconsistency, which would find that the IJ deviated from the precedent of Majidi itself. Don't we have some problem with the provisions that kicked in in May 2006 that sort of undercut our, I'll call it our dramatic holding? Yes, Your Honor. But in the same breath, it was just an omission. It wasn't an inconsistency within the statement and his testimony that would lead someone to deem someone incredible. It was just in addition to the fact that he was kicked as opposed to leaving that out of his statement. It's not something where he omitted an entire beating, or he did not bring up another integral part of his persecution. So he talked about most of it, but he just didn't say that he was kicked in the back. Exactly. That's all it is. It does not go to the heart of his claim at all, Your Honor. That's it. You've reserved some time for rebuttal, Mr. Ahmed. Yes, Your Honor. Excuse me. Yes, Your Honor. Mr. Hogan, good morning. May it please the Court, Brendan Hogan for the government. First and foremost, there was no error of law regarding how the Board decided that the application in this case was untimely. At the end of the last full paragraph on the first page of the Board's decision, they clearly state the proper standard. They cited the regulation. They cited the statute. In no way were they requiring the petitioner. Do you agree that the inquiry was not precisely when he entered the United States, but whether he entered within one year of the filing? Yes, Your Honor. It's not that they were requiring him to prove the specific date of entry. It's just that— Well, that seemed to be what the immigration judge was— Well, they were only just referencing that date because that was the date provided by the petitioner. Without that date, they would just be looking at whether it was filed within one year. They were just mentioning that. Did the immigration judge evaluate the evidence of his presence in India in May of 2011? Not specifically, Your Honor, but in this case, it wasn't probative because, as this Court has determined, documents that are not contemporaneously executed or created are of little probative value, and that's what happened in this case. The letters that are being mentioned were created months after the petitioner entered the United States and months after he filed his application, so they're of little evidentiary weight. They're actually the weakest evidence that he would have been able to provide in this case. And while they create the inference or implication that he was there— You just said that they're the weakest kind of evidence. Is it still evidence that can be considered, should be considered? It would have been better if the immigration judge had noted it, but again, because they were created months after he entered the United States, they're of little evidentiary value. But would it be necessary for him to have documentary evidence at all? I mean, there are circumstances where you could just take the testimony of the petitioner, correct? The notion that they're of little weight, there's some evidence, as Jen has indicated, and there's certainly more evidence than testimony alone. These are all factual determinations, Your Honor, which would be unreviewable. The weight of the evidence that the immigration judge— the weight that the immigration judge gave to the evidence in this case is unreviewable, unfortunately, for the petitioner. And keep in mind, even if this Court were to find that the application was timely filed, he would still be ineligible. Do we even know that he gave weight to the evidence? Again, Your Honor, it would be harmless error. There would be no reason to remand for something of evidence that is this weak. Again, because it was created months after he entered the United States. Did the immigration judge say, I reject this evidence because it was created months after he entered the United States? Not in his decision. He may have mentioned it when they were doing a roll call or marking them as exhibits, but in his actual decision, no, Your Honor, he did not mention them, in the context of finding whether he had filed the application within one year of entering the United States. So how do we know whether the immigration judge just totally ignored this or didn't even think it was there when it is some evidence? I mean, that seems to me repeatedly a problem when we do order a remand that gives rise to our ordering a remand. We don't know what you did with this piece of evidence. And if you believe, you haven't rejected it, saying you're not giving it any weight. But if you didn't think it was in the record, and we point out, yes, it is in the record, now take it back and tell us whether it means anything to you. The decision was well-reasoned, Your Honor, and there is a presumption that the immigration judge was aware of all the evidence, and perhaps the fact that he did not discuss it is because it was of such little weight. But again, that's a factual determination, which is unreviewable. And again, just to reiterate that even if the application is deemed timely because of the credibility determination in this case, he would still be ineligible for an asylum in any event because the credibility determination would apply to both asylum and withholding under the statute and the Convention Against Torture. Yeah, but it's not up to us to determine whether he's eligible for asylum. That's done by the agency in the first instance. But remand would be futile in this instance, Your Honor, because substantial evidence supports the credibility determination, which could be used to— Which would lead us to have to say, and he would be ineligible for asylum, which we can't do. But that remand would be futile, Your Honor. It would just be pro forma. We may have to agree to disagree. And then with respect to the credibility finding in this case, as counsel tried to explain that inconsistencies can only be dramatic to lead to a credibility determination, that's not this Court's case law. It's that when an inconsistency is not dramatic, the petitioner must be given an opportunity to explain. When an inconsistency is dramatic, when it's just so implausible or inconsistent with the evidence, the agency isn't required to give the petitioner an opportunity to explain. The inconsistencies here were really minor, weren't they? I mean, he certainly consistently said he had been punched and struck and physically abused, and he may not have said that they kicked me in the back or pulled back my arms. Well, with regards to the November 2010 incident, Your Honor, he did add in his testimony for the first time that he had a foot placed on his back and that his arms were hyperextended. And when he was given an opportunity to explain that disparity between his prior statement and what he was now testifying to at the hearing, his explanation underscores the immigration judge's concerns with his credibility. First, he said that it was the translator's fault and that when he told the translator, this person who was never named declined to amend the statement. Then he said that, well, he didn't ask the translator to provide a letter to the immigration judge conceding that it was the translator's fault that this information was left out of the statement. And then he said, well, he just dictated the information to the translator and there was never a Punjabi statement in the first place. It's such a convoluted explanation, which the immigration judge wasn't required to accept, that it underscores the credibility of this case. And with the second detention in May 2011, he added that he was punched and kicked in the back and that his thigh muscles were torn and bruised. And when the immigration judge asked him why he had never put that in his written statement, he said that it was in the medical record from that incident, but the medical record is only for the 2010 detention. So whatever happened to him in May 2011 could not have been in the doctor's letter. Does the panel have any further questions? I don't think so, Mr. Hogan. Thank you. Thank you for being here. Mr. Ahmed, you've reserved two minutes for rebuttal. Yes, Your Honor. Contrary to what opposing counsel stated, this would not be harmless to the petitioner because the finding of the asylum threshold is 10 percent, as opposed to if this court does not take jurisdiction and remand to the agency, it would be 59 percent. And even taking into account the four- I'm not sure I'm quite following you on 10 percent, 59 percent. So just explain that a little bit. Okay. In terms of asylum application and the immigration judge dismissing the four pieces of evidence corroborating his absence from the country, if they were found to be- I mean, I guess- Arguendo. He dismissed it. Exactly. He did not even broach it. He did not even look at them. Arguendo, if he took them into consideration, it would only be a 10 percent bar for him to be credible in order for him to claim asylum. You're referring to the statistics that if we were to look at them of how many people are granted asylum? Exactly. Okay. So the level of his credibility is supposed to be 10 percent. Also, the contemporaneous requirement, it's not important because all evidence cannot be found contemporaneously when someone is escaping persecution from his home country. He's traveling for- And this was found- He was found to be credible from his mode of journey coming into the U.S. So for him to come from Central America, from Mexico, coming into Texas, taking a truck and coming to New York State, for him to have these- It's unreasonable to require him to have these documents with him. It's obvious he's going to be able to retain them subsequent to being asked them, which he did do by giving affidavits and employment letters and affidavits from his relatives when he came into the country. So, Honor, this being a question of law, we would ask the case to be remanded for the agency to speak on the issue of his timeliness, which would be proven by his absence within the USA, and them speaking on the four affidavits, which they did not even look at, that prove he wasn't within the country and his application was timely. Thank you, Mr. Hall. Thank you, Honor. You have a wonderful day, Your Honor. Thank you both. Helpful arguments, and we will reserve decision.